IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-783-M-KS

| | | |
|---|---|---|
| ATLAS POWER TECHNOLOGIES INC., a British Columbia corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| SIDNEY W. HINTON, UTILITY INNOVATION HOLDINGS, INC., a Delaware corporation, UTILITY INNOVATION GROUP, LLC, a North Carolina limited liability company, and GRIDSURE, LLC, a North Carolina limited liability company, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on Plaintiff's Emergency Motion for Expedited Discovery. On December 3, 2025, the court granted a temporary restraining order against Defendants and scheduled a hearing for December 17, 2025, on Plaintiff's motion for preliminary injunction. Plaintiff seeks to engage in limited discovery prior to the Rule 26(f) conference in preparation for the preliminary injunction hearing. Defendants oppose the motion, arguing that Plaintiff has not demonstrated good cause for early discovery and that requiring Defendants to engage in expedited discovery prior to the preliminary injunction hearing would be unduly prejudicial as they need to devote their resources to preparing for the preliminary injunction

hearing. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

DISCUSSION

The Federal Rules of Civil Procedure generally prohibit parties from engaging in discovery prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). However, a court may authorize early discovery upon good cause shown. When considering a request for early discovery made in preparation for a preliminary injunction hearing, this court considers the reasonableness of the request in light of the totality of the circumstances. *See Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC*, No. 5:15-CV-115-BR, 2015 WL 12600175, at *3 (E.D.N.C. June 30, 2015) (considering reasonableness of request in light of the following factors: "(1) the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction").

Here, Plaintiff seeks to propound five interrogatories on each Defendant and to conduct a four-hour deposition of Defendant Hinton, as well as a four-hour Rule 30(b)(6) deposition of each of the other three defendants. Plaintiff argues that it seeks limited discovery, focused on the issues to be addressed at the preliminary injunction hearing scheduled for next week, and that allowing early discovery will help guide

2

the parties' evidentiary presentation and further ensure preservation of evidence. The court has considered Plaintiff's request in light of the totality of the circumstances, including the nature and scope of the discovery sought, the issues to be addressed at the preliminary injunction hearing, the expedited nature of the hearing and Plaintiff's request, and the burden that early discovery will impose on Defendants.

Giving due consideration to the issues raised by Defendants, both as to the merits of Plaintiff's claims and to the burden that early discover will impose on Defendants due to the short time-frame involved, the court finds it would be reasonable to permit Plaintiff to obtain answers prior to the preliminary injunction hearing to the proposed interrogatories as modified herein. The court declines, at this juncture, to order any depositions prior to the Rule 26(f) conference.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Emergency Motion for Expedited Discovery [DE #22] is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff shall be permitted to serve, on or before **December 11, 2025**, its proposed interrogatories, modified as set forth on Attachments A and B hereto, the court ordering no modification to the instructions.

2. On or before **December 15, 2025**, Defendants shall serve their responses to the interrogatories in accordance with Fed. R. Civ. P. 33(b), provided that they may not object to the interrogatories on the grounds that the information sought is not relevant or overbroad.

3.     Plaintiff's request to conduct depositions prior to the Rule 26(f) conference is denied without prejudice.

4.     Except as may be allowed by further order of the court, the Federal Rules of Civil Procedure, or written stipulation of the parties, the parties may not engage in discovery in this action beyond that expressly permitted herein prior to the Rule 26(f) conference.

This 10th day of December 2025.

_KIMBERLY A. SWANK_
United States Magistrate Judge

4

**INTERROGATORIES**

1.    Identify the direct or indirect ownership interest, if any, you have in each of the following entities.  Your answer must include the date you acquired the ownership interest; if the ownership is indirect, the entity through which you have the ownership interest; and whether the interest is controlling:

- Utility Innovation Holdings, Inc.

- Utility Innovation Group, LLC

- UtilityEngineering, LLC

- GridSure, LLC

- GridPlus, LLC

- EnergyStorage, LLC

- Any other entity doing business as UtilityInnovation Group

2.    Identify each position or role that you hold or have held at any of the entities listed in Interrogatory No. 1 since January 1, 2020.  For each position identified, identify the dates you held the position, the specific business organization with which you held the position, your immediate supervisor, if any, and your day-to-day job duties, including any involvement in research, development, or marketing of products.

3.    Identify each time, since January 1, 2020, that you told an employee or board member of Atlas about the activities of any entity listed in Interrogatory No. 1.  You answer should include the identity of any such employee or board member, the approximate date of such conversation or communication, the manner in which the conversation or communication occurred, and the information you conveyed about such entity's business and target markets.  *Activities* include any actions of the entities listed in Interrogatory No. 1, including but not limited to the development or marketing of current or expected products, plans to target specific markets, including the AI data center

market, and plans to target products that solve certain issues, including power volatility at AI data centers.

4.      As to the development of the Integrated Energy Management and Controls Ecosystem, identify the persons involved, the entities involved, and the dates the following events occurred:

- The identification of the AI data center market as a target market for UIG;

- The identification of power volatility at AI data centers as a problem UIG would seek to solve;

- The identification of Supplier-1 as a potential partner or supplier;

- The construction of a prototype Integrated Energy Management and Controls Ecosystem;

- The finalization of the design of the Integrated Energy Management and Controls Ecosystem;

- The beginning of manufacture of the Integrated Energy Management and Controls Ecosystem

- The delivery, if any, of the Integrated Energy Management and Controls Ecosystem to a customer.

5.      Describe in detail your involvement in the research, development, and marketing of the technology related to the issue of power volatility at AI data centers, including Integrated Energy Management and Controls Ecosystem, including the dates during which you were involved, your role in guiding and providing feedback to the research and development team, your role in selecting Supplier-1 as a supplier or partner, and your role in identifying and marketing the Integrated Energy Management and Controls Ecosystem to customers.

## **INTERROGATORIES**

1.      Describe the owners or members of the following entities and the role of the entity in the development of the Integrated Energy Management and Controls Ecosystem.

- Utility Innovation Holdings, Inc.

- Utility Innovation Group, LLC

- UtilityEngineering, LLC

- GridSure, LLC

- GridPlus, LLC

- EnergyStorage, LLC

- Any other entity doing business as UtilityInnovation Group

2.      As to the development of the Integrated Energy Management and Controls Ecosystem, identify the persons involved, the entities involved, and the dates the following events occurred:

- The identification of the AI data center market as a target market for UIG;

- The identification of power volatility at AI data centers as a problem UIG would seek to solve;

- The identification of Supplier-1 as a potential partner or supplier;

- The construction of a prototype Integrated Energy Management and Controls Ecosystem;

- The finalization of the design of the Integrated Energy Management and Controls Ecosystem;

- The beginning of manufacture of the Integrated Energy Management and Controls Ecosystem; and

- The delivery, if any, of the Integrated Energy Management and Controls Ecosystem to a customer.

3.      Identify every customer and client of UIG, potential or present, including

without limitation any partner or joint venturer, with whom UIG has discussed the marketing, licensing, and/or sale of the Integrated Energy Management and Controls Ecosystem, from January 1, 2024, to the present. For each customer or client you identify, indicate whether the customer or client has contracted to purchase the Integrated Energy Management and Controls Ecosystem, the value of the contract to UIG, and for when delivery is scheduled or when delivery occurred.

4.     Identify each and every time UIG has received, obtained, or acquired information related to the Energy Storage Control System, or power load fluctuation problems at data centers, from January 1, 2024, to the present.

5.     Identify all custodians at UIG that "preserv[ed] and return[ed] to Atlas the Atlas Trade Secrets and all of Atlas's confidential information, and all copies thereof, regardless of the format in which such copies are stored or maintained" pursuant to the Court's temporary restraining order, (D.E. 19, at 6).